No. 89-383

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JOAN M. GRIFFITH, as Guardian of the
minor children of CHARLES PAUL GRIFFITH;
and JOAN M. GRIFFITH, individually,

        Plaintiffs and Respondents,

-v-

MONTANA POWER COMPANY, a corporation,

        Defendant and Appellant.

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable Ed McLean Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Richard Ranney; Shelton C. Williams; Williams Law
Firm; Missoula, Montana

      For Respondent:

          Kenneth H. Grenfell; McChesney, Grenfell & Ogg,
Missoula, Montana

          Ben Everett; Knight, Dahood, McLean & Everett;
Anaconda, Montana

Submitted on Briefs:  May 16, 1990

Decided:  June 26, 1990

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

After trial in the District Court of the Twentieth Judicial District, Sanders County, the jury returned a verdict in favor of defendant, Montana Power Company (MPC). Plaintiffs moved the District Court for a new trial based on irregularities in the proceedings which prevented a fair trial and an error in law at the trial. The District Court granted plaintiffs a new trial and defendants appeal. We affirm.

The sole issue for our consideration is whether the District Court erred in granting plaintiffs a new trial?

Certain agreed facts were read as true to the jury prior to trial. They may be summarized as follows: MPC entered into a contract with Williams Construction Company, Inc. (Williams), to replace a pole and certain power distribution lines owned by MPC near a bridge crossing the Clark Fork River approximately 4 miles east of Paradise, Montana. Charles Paul Griffith (Mr. Griffith), was employed by Williams as a lineman on the Clark Fork River crossing project. The crews were working to string new lines across the river. While Mr. Griffith was working with other members of the crew to raise a new distribution line, the line became hung up in the river. Mr. Griffith was working from the surface of the bridge. Tim Smith, an MPC employee, was assisting the Williams crew by driving a pickup truck which was used to pull the new lines into position. Richard Hewitt, the Williams crew foreman, was located on the pole on the west side of the river.

Al Whitaker, another Williams lineman, was on the pole on the east side of the river crossing. Whitaker attached a tag line connected to a brass hook to the conductor which was caught in the river, and Mr. Griffith then took the tag line to the bridge and used it to pull the conductor free from the obstruction in the river. At some point the conductor contacted an energized portion of the distribution line, became energized, and Mr. Griffith was electrocuted. He fell from the bridge, and died of his injuries.

The evidence established that the tag line which Mr. Griffith was using to free the conductor was nonconducting polypropylene, and was not the path through which electricity entered his body. None of the other crew members were eye witnesses to the manner of electrocution. Mr. Griffith had electrical burn marks on both hands, and there were apparently correspondending burn marks on the conductor. In addition, Mr. Griffith had burn marks on both knees. MPC contends that the physical facts show that after the new conductor was freed by means of the tag line, Mr. Griffith pulled the conductor towards himself, and after it had become energized on coming into contact with the 7200 volt phase, he placed his hands on it.

Plaintiff, Joan M. Griffith, acting individually, and as guardian of her three minor children, brought this action against MPC based on alleged negligence. Plaintiffs contended that MPC owed Mr. Griffith and the Williams line crew a duty to provide a safe place to work pursuant to §§ 50-71-201, 202 and 203, MCA

3

(1985). They contended such duty was breached when MPC failed to exercise reasonable care and to take proper precautions surrounding the work on the project. Plaintiffs also maintained that MPC retained substantial control and right to control Williams on this project and that MPC negligently exercised that control. Plaintiffs further contended that such duty was nondelegable and therefore any negligence of Williams was to be imputed to MPC. They maintain that MPC knew or should have known that the kind of work the Williams crew was doing created a "peculiar risk" of physical harm to individuals unless special precautions were taken. Plaintiffs sought damages for loss of society, comfort, consortium, contribution to support, education and training, and emotional distress as well as other expenses.

MPC denied any negligence on its part. It contended that Williams, acting as an independent contractor, retained control of its employees. In MPC's proposed pre-trial order, it summarized its contentions:

> [t]he sole cause of Mr. Griffith's tragic accident was his inexplicable conduct in pulling the conductor to him, placing his hands on it, while his knees were against the steel bridge rail, and continuing to pull the wire to the point that it contacted the energized south phase. Mr. Griffith's conduct violated the work rules agreed upon by the Williams crew, and violated various OSHA and NESC rules and requirements, all of which were well known to Mr. Griffith as a result of his education, training and experience as a journeyman lineman. The conduct of Mr. Griffith was unforeseeable to his foreman Dick Hewitt, to Williams Construction Co., Inc., and to the Montana Power Company, and it was the sole cause of his death.

MPC further contended that the Occupational Safety and Health

Review Committee conducted a detailed investigation and concluded that there were no OSHA violations and that the sole cause of the incident was the "unforeseeable and idiosyncratic behavior" of Mr. Griffith. MPC concluded that Mr. Griffith's own negligence barred or reduced any recovery for damages.

Prior to trial plaintiffs moved the District Court to prohibit any mention at trial of the OSHA Administrative Law Judge's (ALJ) findings of fact, conclusions of law and judgment, as well as Department of Labor charges against Williams, and the absence of OSHA and Montana Public Service Commission's citations to MPC.

MPC contended that the ALJ's findings, conclusions and judgment should be admitted as an exception to the hearsay rule under Rule 803(24), M.R.Evid. The District Court granted plaintiffs' motion to prohibit any reference to the ALJ's findings, conclusions and judgment, stating:

> It is the opinion of this Court that Plaintiffs' motion to prohibit mention of the OSHA ALJ's Findings of Fact, Conclusions of Law and the absence of MPSC and OSHA citations to Montana Power Company should be granted. However, <u>if Plaintiffs call experts to testify as to the violation of certain OSHA standards, the Court will allow the introduction of evidence of the OSHA hearings</u>. (Emphasis added.)

During plaintiffs case-in-chief, their expert was not questioned and did not testify about OSHA. However, on cross-examination, defense counsel asked the expert whether there were any violations of the OSHA standards. Plaintiffs objected to such questioning, but were overruled. MPC questioned the plaintiffs' expert at length with regard to the OSHA standards.

5

During trial MPC refered to OSHA a number of times. MPC also submitted a number of instructions with regard to OSHA regulations. At the conclusion of the trial the jury returned a verdict for MPC. Plaintiffs then moved for a new trial. The motion was granted and MPC appeals.

Did the District Court err in granting plaintiffs a new trial?

The District Court has sound discretion to grant a new trial and it will not be overturned absent a showing of manifest abuse of discretion. Stanhope v. Lawrence (Mont. 1989), 787 P.2d 1226, 47 St.Rep. 438.

On appeal, MPC contends that the jury could not have understood this case without reference to OSHA since OSHA provides the standard of care the linemen should use in this case. MPC maintains that since violations of safety standards are evidence of negligence, then compliance with the safety standard is evidence of no negligence. It contends the District Court did not err in admitting the OSHA evidence or in subsequently instructing the jury on OSHA standards.

Plaintiffs contend that under the court's ruling, as reemphasized a number of times in the course of conferences between counsel and the court, plaintiffs' conduct was severely limited. In substance plaintiffs argue they were prohibited from questioning their experts on possible violations of OSHA in the course of direct examination. Plaintiffs' expert, on direct examination, testified only to violations of the National Electric Safety Code

(NESC). It was only on cross-examination that he made any reference to OSHA. Plaintiffs contend this effectively eliminated any opportunity on their part to present evidence of OSHA violations; while effectively allowing MPC to present evidence of OSHA compliance.

At the request of MPC the District Court gave a number of instructions on OSHA. Plaintiffs contend that the instructions together with the OSHA evidence allowed as to MPC, and the limitation upon evidence as to the plaintiffs, prejudiced their case. We agree with the District Court's conclusion that there was such prejudice.

As mentioned, the District Court effectively prohibited plaintiffs' examination of their own expert on OSHA, and yet allowed MPC to cross examine the same expert on OSHA. The instructions given by the court included Instruction #18 which read:

> Plaintiffs' Decedent, Charles Paul Griffith, was bound to comply with applicable provisions as established by the Occupational Safety & Health Administration (OSHA) and applicable provisions of the NESC. If you were to find that he violated an applicable provision of the OSHA standards, you would consider that to be evidence of his negligence. If you were to find that he violated an applicable provision of the NESC, you would find that that constitutes negligence as a matter of law. Such negligence is of no consequence unless it acted as a cause of the accident in question.

Instructions #29 and #30 instructed the jury on specific OSHA provisions. Instruction #32 read:

> The requirements of the Occupational Safety & Health Act apply to Williams Construction Co., Inc. and its

7

employees, including Plaintiffs' Decedent, Charles Paul Griffith. The OSHA code does not apply to the Montana Power Company in connection with the activities involved in the present action unless you find Montana Power vicariously liable for the Williams Construction Co., Inc. if any. [sic]

In the order and opinion granting plaintiffs' motion for a new trial the District Court stated its reasons as follows:

It is the Court's opinion that the Court committed error with respect to the OSHA evidence. This Court had previously granted the Motion in Limine prohibiting mention of the OSHA ALJ's Findings of Fact, Conclusions of Law and Judgment. Plaintiffs' counsel was advised that if he introduced evidence of OSHA violations, Defendant would then be allowed to introduce evidence of the OSHA findings. When Plaintiffs' expert was called to testify, no questions asked of him were directed to OSHA on direct examination. However, on cross-examination, Defense Counsel asked the witness whether there were any violations of the OSHA standards. Plaintiffs' counsel objected to this line of questioning, arguing that it should not be allowed given the Court's ruling on the Motion in Limine. The Court overruled the objection and later issued instructions as to compliance with OSHA regulations.

The court later stated that it had committed error in giving any instructions with regard to OSHA. We agree that the District Court properly granted a new trial and conclude there was no abuse of discretion. The effect of the court's rulings, including instructions, was to deny the plaintiffs an opportunity to present any evidence of OSHA violations by MPC or by Williams for which MPC could be held vicariously liable. On the other hand, the effect was to allow MPC to present its theory of compliance with OSHA together with extensive reference to OSHA regulations, to their obvious benefit. We hold that the District Court did not err in granting plaintiffs a new trial.

Without ruling upon the same, we make the following comments. Under Runkle v. Burlington Northern (1980), 188 Mont. 286, 303-4, 613 P.2d 982, 992-93, and similar cases, it would appear that evidence of the OSHA regulations and direct evidence of the breach of the same or compliance with the regulations, would be admissible.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices


Justice Diane G. Barz did not participate.

9